UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
RAUL CAMACHO,

                Plaintiff,

      -against-                                                14-cv-2592 (LAK)

ESS-A-BAGEL, INC., et al.,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### MEMORANDUM OPINION

    Appearances:

           Justin Cilenti
           Peter H. Cooper
           CILENTI & COOPER, PLLC
           *Attorneys for Plaintiff*

           Carolyn D. Richmond
           Glenn S. Grindlinger
           James M. Lemonedes
           FOX ROTHSCHILD, LLP
           *Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge.*

        Plaintiff Raul Camacho was employed as a "baker, porter/cleaner, and occasional delivery person" at Ess-A-Bagel, a kosher delicatessen and bakery, from approximately March 2007 until March 2014.[1] He brings this suit to enforce his alleged rights under the Fair Labor Standards

---

[1] Am. Compl. [DI 21] ¶¶ 30-31.

2

Act ("FLSA")[2] and the New York Labor Law ("NYLL").[3]  Camacho claims principally that defendants failed to pay his requisite minimum and overtime wages and that he did not receive "spread of hours" pay as required by the NYLL.[4]

The Court referred this case to Magistrate Judge Dolinger for pretrial matters,[5] at which point it was consolidated for pretrial purposes with two other actions, *Mohamed v. Ess-a-Bagel, Inc.*,[6] and *Tarfaia v. Ess-a-Bagel, Inc.*,[7] brought by current and former Ess-a-Bagel employees.[8]  Camacho and his attorneys now have submitted for court approval a proposed settlement that purports to terminate this litigation.  Camacho has not sought to represent collective or class action plaintiffs, and the proposed settlement would only terminate the litigation as between

---

[2] *See id.* ¶¶ 57-72 (alleging claims under 29 U.S.C. § 201 *et seq.*).

[3] *See id.* ¶¶ 73-84 (alleging claims under N.Y. LAB. LAW §§ 195(3), 198, 661, 663(1), and 12 N.Y.C.R.R. §§ 146-1.6 (spread of hours pay), 146-2.1 (employer records), 146-2.3 (statements to employees)).

[4] "New York law provides that covered employees . . . are entitled to an additional hour's pay at the basic minimum hourly wage rate for any day in which 'the spread of hours' – defined as 'the interval between the beginning and end of an employee's workday' – exceeds 10 hours." *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 339 (S.D.N.Y. 2005) (quoting 12 N.Y.C.R.R. § 142-2.18) (internal citation omitted).

[5] *See* Order (Apr. 16, 2014) [DI 5].

[6] No. 13 Civ. 8726.

[7] No. 14 Civ. 1293.

[8] *See* Order (June 26, 2014) [DI 19] (establishing consolidated pretrial schedule).

Camacho and defendants in this case.[9]

The proposed settlement would discontinue the case in exchange for $43,000.[10] Camacho's counsel, Cilenti & Cooper, PLLC, would retain 35 percent of this figure as its fee, but would not seek reimbursement of out-of-pocket expenses.[11]  Plaintiff's counsel estimates that if Camacho had proceeded to trial, his maximum recovery would have been $53,000, "exclusive of liquidated damages and statutory attorneys' fees," and that this estimate "would have nearly doubled if liquidated damages were awarded under one but not both of the statutes."[12]  Applying the relevant percentages, Camacho would receive $27,950 and his counsel would receive $15,050 under the proposed settlement.  Camacho therefore stands to receive approximately 52.7 percent of his stated $53,000 maximum recovery.

*Analysis of the Proposed Settlement*

The FLSA places "strict limits on an employee's ability to waive claims for unpaid wages or overtime under 29 U.S.C. § 216 for fear that employers would coerce employees into settlement and waiver."[13]  However, the Supreme Court has indicated "that employees may waive

---

[9] The parties in *Mohamed* and *Tarfaia* have stated that they are preparing a class settlement, although no proposed settlement agreement in those cases has been submitted yet to this Court.  *See* Ltr. from C.K. Lee to Court (Nov. 3, 2014) [No. 13 Civ. 8726, DI 31].

[10] Ltr. from J. Cilenti to Court (Nov. 20, 2014) ("Cilenti Ltr.") at 2.

[11] *Id*. at 3.

[12] *Id*. at 2.

[13] *Manning v. New York Univ.*, No. 98 Civ. 3300 (NRB), 2001 WL 963982, at *11 (S.D.N.Y. Aug. 22, 2001), *aff'd on other grounds*, 299 F.3d 156 (2d Cir. 2002).

4

FLSA claims pursuant to judicially-supervised settlements."[14]

Some disagreement has arisen among the district courts in this circuit as to whether such settlements do in fact require court approval, or may be consummated as a matter of right under Rule 41.[15] The trend among district courts is nonetheless to continue subjecting FLSA settlements to judicial scrutiny.[16] This Court sees no reason at present to deviate from the traditional practice, particularly as the parties have "have requested judicial approval" in this case.[17]

District courts must evaluate whether a proposed FLSA settlement is "fair and reasonable" and whether any concomitant award of attorneys' fees is reasonable.[18] Such scrutiny is especially important in light of the recent explosion in FLSA litigation. According to one estimate,

---

[14] *Elliott v. Allstate Investigations, Inc.*, No. 07 Civ. 6078 (DLC), 2008 WL 728648, at *1 (Mar. 19, 2008) (discussing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 113 n.8 (1946)).

[15] *Compare Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) ("[A]n employee may not waive or otherwise settle an FLSA claim for unpaid wages for less than the full statutory damages unless the settlement is supervised by the Secretary of Labor or made pursuant to a judicially supervised stipulated settlement."), *with Picerni v. Bilingual Seit & Preschool Inc.*, 925 F. Supp. 2d 368, 376, 378-79 (E.D.N.Y. 2013) (concluding that "the FLSA is not exempt from the right of voluntary dismissal under Rule 41" and that parties may settle an FLSA case without court approval, though by doing so they assume the risk of a future court determining that the settlement was unreasonable and will not be enforced). The question hinges on the structure and purpose of the FLSA and has no import beyond the FLSA context.

[16] *See, e.g.*, *Archer v. TNT USA, Inc.*, 12 F. Supp. 3d 373, 384 n.2 (E.D.N.Y. 2014) (discussing courts' reluctance to adopt the holding of *Picerni*); *Armenta v. Dirty Bird Grp., LLC*, No. 13 Civ. 4603 (WHP), 2014 WL 3344287, at *4 (S.D.N.Y. June 27, 2014) ("Taken to its logical conclusion, *Picerni* would permit defendants to circumvent the FLSA's 'deterrent effect' and eviscerate FLSA protections.").

[17] *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (scrutinizing an FLSA settlement after the parties sought court approval).

[18] *Wolinsky*, 900 F. Supp. 2d at 335-36.

FLSA filings have increased some 400 percent nationwide since 2001 and now comprise nearly nine percent of all new civil cases in this district.[19] In such circumstances, courts must remain alert to the risk that the filing and settling of FLSA cases has become a volume-based business and that "the interest of plaintiffs' counsel in counsel's own compensation will adversely affect the extent of the relief counsel will procure for the clients."[20]

In determining whether to approve a proposed FLSA settlement, relevant factors include:

> "(1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion."[21]

Factors that weigh against settlement approval include:

> "(1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace."[22]

Examination of whether a proposed FLSA settlement is fair and reasonable is thus an information intensive undertaking. The Court requires evidence as to the nature of plaintiffs' claims, the *bona*

---

[19] *Fujiwara v. Sushi Yasuda Ltd.*, No. 12 Civ. 8742 (WHP), 2014 WL 5840700, at *1 (S.D.N.Y. Nov. 12, 2014).

[20] *Cisek v. Nat'l Surface Cleaning, Inc.*, 954 F. Supp. 110, 110-11 (S.D.N.Y. 1997).

[21] *Wolinsky*, 900 F. Supp. 2d at 335 (internal quotation marks omitted).

[22] *Id*. at 336 (internal quotation marks omitted).

6

*fides* of the litigation and negotiation process, the employers' potential exposure both to plaintiffs and to any putative class, the calculations underlying estimates of plaintiffs' total recovery, the probability of plaintiffs' success on the merits, and the basis for any requested fee award.

The parties here assert that the proposed settlement "is a fair and equitable resolution of vigorously disputed claims reached in arms-length negotiations between the parties."[23] The Court is informed that defendants contest all of plaintiff's claims and would argue at trial that Camacho received proper minimum wage payments, overtime payments, and "spread of hours" pay.[24] Moreover, plaintiff's counsel asserts that there was a serious litigation risk with respect to the issue of "tip credits." The FLSA and the NYLL "permit restaurant employers to pay tipped employees a lower minimum wage as long as the employees earn a certain amount in tips."[25] Plaintiff's counsel argues that Ess-a-Bagel improperly took "tip credits" with respect to Camacho because (i) defendants did not provide Camacho with proper notice that they were taking tip credits, (ii) Camacho did not receive required wage statements informing him of the amount of the tip credits, (iii) Camacho regularly engaged in non-tipped duties, and (iv) Camacho's tips were so minimal that his total wages were not equal to or greater than the statutory minimum wage.[26] Plaintiff's counsel nonetheless asserts that defendants have "potentially viable arguments" that tip credits were appropriate in this case, and that if defendants convinced a jury of those arguments it would "greatly reduce the

---

[23] Cilenti Ltr. at 1.

[24] *Id*. at 2.

[25] *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 239 (2d Cir. 2011) (citing 29 U.S.C. § 203(m) and 12 N.Y.C.R.R. § 146-1.3).

[26] Cilenti Ltr. at 2.

7

damages to which [Camacho] would be entitled."[27]

If the parties' joint submission is to be credited, it would appear that the proposed settlement emerged from an arm's-length negotiation and the litigation was duly contested. These factors weigh in favor of approving the settlement. However, the parties' submission is deficient in other respects. It does not "provide the Court with each party's estimate of the number of hours worked or the applicable wage."[28] The Court therefore has no sense of how plaintiff's counsel arrived at the maximum recovery figure of $53,000, nor to what extent resolution of the "tip credit" issue in defendants' favor would decrease that figure. The parties' submission lacks also any declarations, affidavits or exhibits substantiating its arguments.[29] In the absence of such information, the Court cannot discharge its duty to ensure that the proposed settlement is fair and reasonable. It may be, in light of a more complete record, that the proposed settlement merits approval. But as it stands, the current submission is inadequate.

Furthermore, the proposed settlement is problematic in two additional respects.

*First*, the text of the proposed settlement agreement (the "Agreement") contains a confidentiality requirement.[30] This section would bar Camacho from discussing the settlement with

---

[27] *Id*.

[28] *Mamani v. Licetti*, No. 13 Civ. 7002 (KMW), 2014 WL 2971050, at *2 (S.D.N.Y. July 2, 2014) (rejecting a proposed FLSA settlement agreement).

[29] *See, e.g.*, *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 180 (S.D.N.Y. 2014) (approving an FLSA settlement on the basis of such evidence).

[30] Agreement ¶ 8.

anyone except "his immediate family members, financial advisors and attorneys."[31]

The Court will not approve this restriction, at least on this record. The common law right of access attaches presumptively to any "judicial document," defined as a document "relevant to the performance of the judicial function and useful in the judicial process."[32] Once a court determines that the right attaches, it then must "determine the . . . 'weight to be given to the presumption of access'" as measured by "'the role of the material at issue in the exercise of the Article III judicial power and the resultant value of that information to those monitoring the federal courts.'"[33] "Only when competing interests outweigh the presumption may access be denied."[34]

The "overwhelming majority of courts reject the proposition that FLSA settlement agreements can be confidential."[35] These courts reason that FLSA settlements "indisputably" implicate the "judicial function" because they require judicial approval.[36] The rationale for rejecting confidential FLSA settlements is "particularly strong," since "[s]ealing FLSA settlements from public scrutiny could thwart the public's independent interest in assuring that employees' wages are

---

31
    *Id.* ¶ 8(A).

32
    *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006).

33
    *Id*. at 119 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)).

34
    *United States v. Erie Cnty., N.Y.*, 763 F.3d 235, 239 (2d Cir. 2014).

35
    *Armenta*, 2014 WL 3344287, at *2; *see also Joo v. Kitchen Table, Inc.*, 763 F. Supp. 2d 643, 648 (S.D.N.Y. 2011) ("[T]his Court joins the overwhelming consensus of district courts that have considered the issue to hold that an FLSA settlement cannot be sealed absent some showing that overcomes the presumption of public access.") (surveying cases).

36
    *Wolinksy*, 900 F. Supp. 2d at 337.

fair."[37] The Court agrees that FLSA settlements are judicial documents to which the public's right of access attaches, and concludes further that any countervailing privacy interests often will be outweighed by the public's interest in ensuring that workers receive "[a] fair day's pay for a fair day's work."[38] The Court accordingly will not approve the proposed settlement, at least on the present record, unless the confidentiality provision is removed and the revised Agreement posted to the public docket.

*Second*, the language of the Agreement's general releases is far too sweeping to be "fair and reasonable." In exchange for the $43,000 settlement payment, Camacho, under the proposed Agreement, would waive all claims "of any kind whatsoever, at law or in equity, direct or indirect, known or unknown, discovered or undiscovered, which he had, now has or hereafter can, shall or may have against Defendants."[39] The waiver encompasses all matters "from the beginning of the world to the effective date of this Agreement."[40] And, instead of covering only wage-and-hour claims or matters relating to the instant suit, the releases cover:

---

[37] *Tran v. Thai*, No. 08 Civ. 3650 (LHR), 2009 WL 2477653, at *1 (S.D. Tex. Aug. 12, 2009) (internal quotation marks omitted).

[38] *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 283 (2d Cir. 2008) (quoting 81 CONG. REC. 4983 (1937) (message of President Roosevelt)).

[39] Agreement ¶ 5.

[40] *Id*.

"any other claim, whether for monies owed, reimbursement, attorneys' fees, litigation costs, damages, torts, intentional infliction of emotional distress, negligence, promissory estoppel, breach of contract, breach of an implied covenant of good faith and fair dealing, constructive discharge, wrongful discharge, defamation, fraud, misrepresentation, or otherwise, arising prior to or at the time of the execution of the Agreement."[41]

These releases, if approved, would go far beyond terminating the present litigation. They purport to waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.

When courts have an obligation to scrutinize settlement agreements, they typically reject such broad releases. In this circuit, for example, class action releases "may include claims not presented and even those which could not have been presented," but only when "the released conduct arises out of the identical factual predicate as the settled conduct."[42] The releases in the proposed Agreement contain no such limitation.

In the context of an FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers, such broad releases are doubly problematic. As one court has concluded:

> "An employee who executes a broad release effectively gambles, exchanging unknown rights for a few hundred or a few thousand dollars to which he is otherwise unconditionally entitled. In effect, the employer requests a pervasive release in order to transfer to the employee the risk of extinguishing an unknown claim. . . . Although inconsequential in the typical civil case (for which settlement requires no judicial review), an employer is not entitled to use an FLSA claim . . . to leverage a release from liability unconnected to the FLSA."[43]

---

[41] *Id*.

[42] *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 107 (2d Cir. 2005) (internal quotation marks omitted).

[43] *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010).

This Court agrees. The parties have every right to enter into a settlement that waives claims relating to the existing suit in exchange for a settlement payment. But the Court will not countenance employers using FLSA settlements to erase all liability whatsoever in exchange for partial payment of wages allegedly required by statute. A release as broad as that in the proposed Agreement "confers an uncompensated, unevaluated, and unfair benefit on the employer" and is "inequitable and unfair."[44]

These deficiencies must be remedied before approval is appropriate.

*Analysis of the Proposed Fee Award*

Counsel's fee request is also inadequate.

Courts in FLSA cases consider whether a proposed award of attorneys' fees is reasonable.[45] In this circuit, a proper fee request "entails submitting contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done."[46] The present submission includes none of this information. Especially problematic is the fact that counsel's submission touts the fact that the proposed fee award is "[in] accordance with the firm's loadstar [sic]," while providing no information about what that lodestar is or how it was calculated.[47]

---

[44] *Id*. at 1352.

[45] *Wolinsky*, 900 F. Supp. 2d at 336-37.

[46] *Id*. at 336 (citing *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)).

[47] Cilenti Ltr. at 4.

12

Courts deny unsubstantiated FLSA fee requests[48] and will decrease a requested fee if the hours billed are unreasonable or the hourly rate too high.[49]

It may be that counsel's fee request is entirely commensurate with the amount of time that the lawyers spent on this case. But such determinations require evidence, and plaintiff's counsel has provided none. The fee request therefore cannot be approved.

*Conclusion*

The request to approve the proposed settlement is denied without prejudice to the filing of a new and complete motion for approval.

SO ORDERED.

Dated:   December 11, 2014

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[48] *See, e.g.*, *Mamani*, 2014 WL 2971050, at *3 (rejecting a fee request in the absence of substantiating evidence).

[49] *See, e.g.*, *Aguilera v. Cookie Panache*, No. 13 Civ. 6071 (KBF), 2014 WL 2115143, at *2-4 (S.D.N.Y. May 20, 2014).