UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
RAUL CAMACHO,

                Plaintiff,

      -against-                                14-cv-2592 (LAK)

ESS-A-BAGEL, INC., et al.,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

        Appearances:

                Justin Cilenti
                Peter H. Cooper
                CILENTI & COOPER, PLLC
                *Attorneys for Plaintiff*

                Carolyn D. Richmond
                Glenn S. Grindlinger
                James M. Lemonedes
                FOX ROTHSCHILD, LLP
                *Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge.*

        Plaintiff Raul Camacho was employed as a "baker, porter/cleaner, and occasional delivery person" at Ess-A-Bagel, a kosher delicatessen and bakery, from approximately March 2007 until March 2014.[1]  He brings this suit to enforce his alleged rights under the Fair Labor Standards Act

---

[1] Am. Compl. [DI 21] ¶¶ 30-31.

2

("FLSA")[2] and the New York Labor Law ("NYLL").[3]  Camacho claims principally that defendants failed to pay his requisite minimum and overtime wages and that he did not receive "spread of hours" pay as required by the NYLL.[4]

Camacho and his attorneys submitted for court approval a proposed settlement.  District courts must evaluate whether a proposed FLSA settlement is "fair and reasonable" and whether any concomitant award of attorneys' fees is reasonable.[5]  The Court denied the request for settlement approval without prejudice to the filing of a new and complete motion for approval.[6]  The Court identified five deficiencies in the original submission:

> 1.   It did not "provide the Court with each party's estimate of the number of hours worked or the applicable wage."[7]  The Court therefore had no sense of "how plaintiff's counsel arrived at the maximum recovery figure of $53,000, nor to what extent resolution of the 'tip credit' issue in defendants' favor would decrease that figure."[8]

---

[2]

See id. ¶¶ 57-72 (alleging claims under 29 U.S.C. § 201 et seq.).

[3]

See id. ¶¶ 73-84 (alleging claims under N.Y. LAB. LAW §§ 195(3), 198, 661, 663(1), and 12 N.Y.C.R.R. §§ 146-1.6 (spread of hours pay), 146-2.1 (employer records), 146-2.3 (statements to employees)).

[4]

"New York law provides that covered employees . . . are entitled to an additional hour's pay at the basic minimum hourly wage rate for any day in which 'the spread of hours' – defined as 'the interval between the beginning and end of an employee's workday' – exceeds 10 hours." Doo Nam Yang v. ACBL Corp., 427 F. Supp. 327, 339 (S.D.N.Y. 2005) (quoting 12 N.Y.C.R.R. § 142-2.18) (internal citation omitted).

[5]

Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012).

[6]

Mem. Op. (Dec. 11, 2014) [DI 28].

[7]

Mamani v. Licetti, No. 13 Civ. 7002 (KMW), 2014 WL 2971050, at *2 (S.D.N.Y. July 2, 2014) (rejecting a proposed FLSA settlement agreement).

[8]

DI 28 at 7.

2.     The parties' submission lacked "any declarations, affidavits or exhibits substantiating its arguments."[9]

3.     The text of the proposed settlement agreement (the "Proposed Agreement") contained a confidentiality requirement.  This section would have barred Camacho from discussing the settlement with anyone except "his immediate family members, financial advisors and attorneys."[10] The Court concluded that "FLSA settlements are judicial documents to which the public's right of access attaches,"[11] and concluded further that "any countervailing privacy interests often will be outweighed by the public's interest in ensuring that workers receive '[a] fair day's pay for a fair day's work.'"[12]

4.     The language of the Proposed Agreement's general releases was "far too sweeping to be 'fair and reasonable.'"[13]  They would have gone "far beyond terminating the present litigation," and purported to waive "practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues."[14]

5.     The request for attorneys' fees was unaccompanied by any "contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done."[15]

The parties now have submitted an updated proposed settlement agreement and posted

---

[9]

    *Id.*

[10]

    *Id.* at 8 (quoting Proposed Agreement ¶ 8(A)).

[11]

    *Id.* at 9.

[12]

    *Id.* (quoting *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 283 (2d Cir. 2008) (quoting 81 CONG. REC. 4983 (1937) (message of President Roosevelt)).

[13]

    *Id.*

[14]

    *Id.* at 10.

[15]

    *Id.* at 11 (quoting *Wolinsky*, 900 F. Supp. 2d at 336).

it on the public docket.[16]  This new submission diligently responds to the Court's concerns.  One aspect of the revised agreement, however, is problematic.  Paragraph 14A states:

> "The parties agree that if specifically asked about the status of the Pending Action or this Agreement generally, Plaintiff and Defendants agree that they or it will respond solely by stating that 'The Parties' dispute has been amicably resolved.'"[17]

In other words, while the revised agreement itself now would be publicly available on the Court's docket, the agreement imposes an obligation on the plaintiff – a gag order, really – to refrain from discussing any aspect of the case or the settlement.  This provision, like the confidentiality provision now excised from the proposed settlement, runs afoul of the purposes of the FLSA and the "public's independent interest in assuring that employees' wages are fair."[18]

The Court's obligation to police FLSA settlements to ensure that they are fair and reasonable is a searching one.  It implicates both the rights of the settling employee and the interests of the public at large.  As one court has concluded:

> "To fully implement the policy embodied by the FLSA, the district should scrutinize the compromise in two steps.  First, the court should consider whether the compromise is fair and reasonable to the employee (factors 'internal' to the compromise).  If the compromise is reasonable to the employee, the court should inquire whether the compromise otherwise impermissibly frustrates implementation of the FLSA (factors 'external' to the compromise).  The court should approve the compromise only if the compromise is reasonable to the employee and furthers implementation of the FLSA in the workplace."[19]

It is in this second sense – that of what we might call "external fairness" – that the non-

---

[16]

Settlement Agreement and Release [DI 29].

[17]

DI 29 ¶ 14A.

[18]

*Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260, 1264 (M.D. Ala. 2003).

[19]

*Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010).

5

disclosure provision is problematic.  The "purpose underlying the FLSA is the protection of 'the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others,' and to accomplish these ends, the FLSA 'should be broadly interpreted and applied.'"[20]  Barring the plaintiff from speaking about the settlement would "further[] resolution of no bona fide dispute between the parties," but rather "thwart[] Congress's intent to ensure widespread compliance with the statute . . . by silencing the employee who has vindicated a disputed FLSA right."[21]

Among the people who require the protection of the FLSA are workers who are poorly educated and non-English speaking.  Some of these workers may have an understandable aversion to courthouses and lawyers.[22]  At the same time, such persons are especially vulnerable to workplace exploitation and have much to gain from the diffusion of information about their employment rights.[23]  A non-disclosure provision blocks such information.

To be sure, electronic docketing has increased the public's access to court documents

---

[20]

Poulin v. Gen. Dynamics Shared Res., Inc., No. 09 Civ. 58 (NKM), 2010 WL 1257751, at *2 (W.D. Va. Mar. 26, 2010) (quoting Schultz v. Capital Int'l Sec., Inc., 466 F.3d 298, 304 (4th Cir. 2006)).

[21]

Dees, 706 F. Supp. 2d at 1242.

[22]

See Elizabeth Wilkins, Silent Workers, Disappearing Rights: Confidential Settlements and the Fair Labor Standards Act, 34 BERKELEY J. EMP. & LAB. L. 109, 138 (2013) (noting that foreign-born workers now comprise over 20 percent of those making poverty wages and that a "quarter of new immigrants are undocumented," rendering such workers "particularly susceptible to intimidation").

[23]

See, e.g., Socias v. Vornado Realty L.P., 297 F.R.D. 38, 40 (E.D.N.Y. 2014) ("Low wage employees, even when represented in the context of a pending lawsuit, often face extenuating economic and social circumstances and lack equal bargaining power; therefore, they are more susceptible to coercion or more likely to accept unreasonable, discounted settlement offers quickly.").

for persons with the knowledge and internet access to look for them.[24]  Practically speaking, however, the public filing of the settlement in this case, standing alone, is unlikely to benefit low-wage workers. Documents available via ECF are almost as obscure for many people, including many whom the FLSA aims to protect, as paper courthouse filings were in the pre-digital age.  Pragmatically, the best way for a worker to learn about his or her employment rights is directly or indirectly from a co-worker or an outside organization.  Yet non-disclosure provisions prevent workers "from using a win to publicize both the wrongdoing of the employer and the possibility of success more generally."[25]  For these reasons, a non-disclosure agreement in an FLSA settlement, even when the settlement papers are publically available on the Court's docket, is "contrary to well-established public policy" because it inhibits one of the FLSA's primary goals – to ensure "that all workers are aware of their rights."[26]

To this contention one might object, as many have, that confidentiality clauses and non-disclosure agreements encourage settlements by insulating defendants from the possibility of copycat litigation.  And indeed, in most contexts such logic is perfectly reasonable.  But the congressional purposes underlying the FLSA change the calculus.  The FLSA evinces "Congress's intent . . . both to advance employees' awareness of their FLSA rights and to ensure pervasive

---

[24]

    *See* Lewis A. Kaplan, *Litigation, Privacy and the Electronic Age*, 4 YALE J.L. & TECH. (*formerly* YALE SYMP. L. & TECH.) 1, 23 (2001) (noting that, with the advent of ECF filing, members of the public would be able to " to go to the courts' web sites, scroll through the docket sheets, call up on the screen an image of every document in the court file, and download or print out whatever may be of interest unless, of course, public access is limited in some way.").

[25]

    Wilkins, *Silent Workers*, 34 BERKELEY J. EMP. & LAB. L. at 143.

[26]

    *Guareno v. Vincent Perito, Inc.*, No. 14 Civ. 1635 (WHP), 2014 WL 4953746, at *1 (S.D.N.Y. Sept. 26, 2014).

7

implementation of the FLSA in the workplace."[27]  "[F]ear of copycat lawsuits or embarrassing inquiries" does not "suffice to defeat" these objectives.[28]  Thus, while "an employee whose rights have been vindicated through the FLSA may inform and encourage other employees to do the same, 'vindication of FLSA rights throughout the workplace is precisely the object Congress chose to preserve and foster through the FLSA.'"[29]  It is difficult to imagine a scenario in which the parties' interest in non-disclosure trumps these congressional purposes.  The Court accordingly will not approve the proposed settlement, at least on the present record, unless paragraph 14A is removed.

*Conclusion*

The revised request to approve the proposed settlement is denied without prejudice to the filing of a new motion for approval.

SO ORDERED.

Dated:          January 9, 2015

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[27]
*Dees*, 706 F. Supp. 2d at 1245.

[28]
*Wolinsky*, 900 F. Supp. 2d at 338 (rejecting a request to seal an FLSA settlement).

[29]
*Bouzzi v. F & J Pine Rest., LLC*, 841 F. Supp. 2d 635, 642 (E.D.N.Y. 2012) (quoting *Hens v. ClientLogic Operating Corp.*, No. 05 Civ. 381S (WMS), 2010 WL 4340919, at *4 (W.D.N.Y. Nov. 2, 2010)).